**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PATENT ARMORY, INC.

      Plaintiff,

                                  Case No.: 6:23-cv-02244-WWB-LHP

v.

CRUISE AMERICA, INC.,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS**

Defendant CRUISE AMERICA, INC. ("Defendant" or "Cruise America") respectfully moves this Court, pursuant to Rule 12(b)(6) of Fed. R. Civ. P. to dismiss the First Amended Complaint [DE 13] filed by Plaintiff PATENT ARMORY, INC. with prejudice.

**I.    CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED**

Cruise America moves this Court to (1) review the asserted patents under the *Iqbal/Twombly* pleading standards, as well as the two-step guidelines set forth in *Alice Corp. Pty. v. CLS Bank Int'l* (2) issue an order declaring the asserted patents to be invalid because the claims are directed to ineligible subject matter and that the First Amended Complaint [DE 13] fails to state a claim; (3) issue an order dismissing the First Amended Complaint with prejudice; and (4) award Defendant such further relief as is just and proper.

**II.    STATEMENT OF THE BASIS FOR THE REQUEST**

In *Alice*, the Supreme Court of the United States confirmed that patent claims drawn to patent-ineligible "abstract ideas" should be invalidated. One of the most

important reasons for courts to undertake this scrutiny is that abstract ideas are considered one of the "building blocks of human ingenuity" and, along with laws of nature and natural phenomena, should not be subject to monopoly by any one party. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208,216 (2014).

Under the first step of the *Alice* test, the asserted claims of the patents-in-suit are all directed to the abstract idea of evaluating the details of a customer phone call and available customer service agents in order to determine to whom the call should be routed. *See, e.g.,24/7 Customer, Inc. v. LivePerson, Inc.,* 2017 U.S. Dist. LEXIS 81479, at \*6-7 (N.D. Cal. May 25, 2017)(finding highly analogous claims to be "directed to the abstract idea of routing a call to a customer service agent based on information about the caller.") Under step two of the *Alice* test, the claims do not add "significantly more" than the ineligible concept itself and instead merely provide an instruction to apply the abstract idea. *See, e.g., 24/7 Customer* at \*11-12 (finding that the six functions recited in the claim, namely, (1) identifying the caller, (2) retrieving a profile on the caller, (3) comparing the caller profile with stored customer service representative profiles, (4) ranking customer service representatives, (5) routing the call, and (6) automatically updating the profiles at the end of the call, were well-understood, routine, conventional steps that did not transform the abstract idea into a patent-eligible invention). *See also, Voip-Pal.com, Inc. v. Apple Inc.,* 411 F. Supp. 3d 926, 963 (N.D. Cal. 2019)(finding the asserted claims to be "simply an attempt to implement well-known, longstanding call routing practices using a computer.") The claims are therefore invalid for being directed to ineligible subject matter, namely, an abstract idea (as compared to a novel and non-obvious invention of the type that is eligible subject matter for a patent).

Procedurally, it is appropriate to consider patent eligibility arguments at the pleading stage, and the practice of invalidating claims on motions to dismiss or for judgment on the pleadings is routinely upheld by the Court of Appeals for the Federal Circuit. *See, e.g., Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363 (Fed. Cir. 2019); *Mortg. Application Techs., LLC v. MeridianLink, Inc.,* 839 F. App'x 520 (Fed. Cir. 2021); *Cisco Sys., Inc. v. Uniloc 2017 LLC,* 813 F. App'x 495 (Fed. Cir. 2020); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,* 778 F. App'x 882 (Fed. Cir. 2019).

Finally, the Plaintiff's infringement allegations are conclusory in nature, and fail to articulate a plausible theory of infringement. Therefore, the First Amended Complaint also fails to state a claim for relief under *Iqbal* and *Twombly. See, Safecast Ltd. v. Google, LLC*, 2023 U.S. Dist. LEXIS 209433 (N.D. Cal. Nov. 22, 2023).

## III.    BACKGROUND

Plaintiff is a "non-practicing entity" that holds patents in a number of different fields. The Court, *sua sponte*, dismissed the original complaint as a shotgun pleading. *See,* Order [DE 12]. The Plaintiff amended its complaint as a matter of right, making the operative complaint the First Amended Complaint [DE 13]. The patents asserted in the First Amended Complaint are U.S. Patent Nos. 10,237,420; 10,491,248; 7,023,979; 7,269,253 and 9,456,086 (the "Asserted Patents"). The Plaintiff has accused the Defendant of infringing one claim in each patent, which are charted in Exhibits 6-10 of the Second Amended Complaint (the "Asserted Claims"). The Asserted Claims relate to methods of routing telephone calls based on a variety of factors, such as when multiple customer service agents are available to take a customer call. Notably, rather than

addressing alleged infringement at the purported source by suing the proprietors of such telephone systems, the Plaintiff has lodged dozens of lawsuits against various companies merely for making use of basic telephony functions such as an automated attendant or an automatic call distribution system as part of their day-to-day business operations. *See, e.g., Patent Armory Inc. v. The Hertz Corporation,* Case No. 6:23-cv-00587-ADA, (W.D. Tex.); and *Patent Armory Inc. v. Radisson Hospitality, Inc.*, Case No. 6:23-cv-00604-ADA, (W.D. Tex.), as but two of many lawsuits it has filed in the last year.

The Defendant Cruise America is in the business of renting and selling recreational vehicles. This is plain to see when navigating to its website https://www.cruiseamerica.com/. However, according to the First Amended Complaint [DE 013], Cruise America is alleged to have infringed the Plaintiff's patents by using specialty "Cruise Booking Customer Support CRM" (software) offered by a company called Kapture CRM, and which is intended for cruise lines. *See, e.g.,* [DE 13-7] Exhibit 6, page 4. This raises serious questions regarding the Plaintiff's pre-suit diligence as even a cursory glance at the Cruise America's website would have immediately revealed that it is not a cruise line and has no cause to use such software, which is for managing customer relationships when booking sea voyages. Since being put on notice of this fatal flaw in its infringement allegations, and being additionally advised that the Defendant does not use, and has never used, Kapture CRM, the Plaintiff provided updated claim charts as part of ongoing settlement discussions, but has made no attempt to correct the glaring deficiencies in the operative complaint. Notably, the Plaintiff has already made use of its one amendment of right to address the shotgun pleading issues raised by the Court.

Turning more specifically to the Asserted Patents, which should be addressed regardless of whether the Plaintiff seeks leave to amend, the subject matter of the asserted patents are all related to a basic set of steps that involve evaluating communications and determining how to route those communications. The Asserted Patents generally disclose that "[t]he present invention provides a system and method for intelligent communication routing within a low-level communication server system," which "allows the target of a communication [to be] defined by an algorithm, rather than a predetermined address, or simple rule, and the algorithm [is] evaluated in real time for resolution of the target, to deliver the communication or establish a real or virtual channel." *See, e.g.*, U.S. Patent No. 7,023,979 at 59:9-21. The Asserted Patents each explain that the purported invention permits "communications routing on seemingly sophisticated or abstract concepts [to] be efficiently handled at a low level without interrupting the basic call processing functions or requiring non-standard hardware." *Id* at 68:64-69. In essence, the specifications characterize the invention as steps for routing communications using standard, well-known telephone hardware.

## IV.    LEGAL MEMORANDUM SUPORTING THE REQUEST

### a.    Standards Under Fed. R. Civ. P. 12(b)(6)

The standards set forth in *Iqbal* and *Twombly* apply to a complaint asserting patent infringement. *See, e.g., Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, 2016 U.S. Dist. LEXIS 122110, *2 (S.D. Fla. June 2, 2016). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, this standard calls for "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

(2007). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." *Id.* at 555. This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citations omitted). In the context of patent infringement litigation, this has been interpreted to mean that the allegations must "articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021); *Safecast Ltd.. v. Google, LLC*, 2023 U.S. Dist. LEXIS 209433 (N.D. Cal. Nov. 22, 2023).

### b. The First Amended Complaint does not Articulate a Plausible Theory of Infringement

As indicated above, Cruise America **does not use, and has never used**, the "Cruise Booking Customer Support CRM by Kapture CRM" on which the Plaintiff's infringement allegations hinge. While the Plaintiff has been made aware of this error in its pre-suit diligence, these allegations nevertheless remain in the operative complaint. Critically, even if the Court were to accept the baseless allegation that Cruise America uses this software as true for the purposes of a motion to dismiss, the Plaintiff still fails to state a plausible patent infringement claim because it does not allege *how* the Kapture CRM software satisfies critical elements of the Asserted Claims, nor does it allege that Cruise America satisfies these elements in other ways.

Specifically, each of the Asserted Claims calls for evaluating the potential targets of the communications with mathematical formulae that consider multiple variables. For claim 20 of the '420 patent, this is a "probabilistic predictive multivariate evaluator." Claim 11 of the '748 patent calls for "estimating an expected economic value" based on scores associated with each potential recipient of the call and the content of the communication.

Claim 10 of the '979 patent requires a "multivariate cost function." Claim 10 of the '253 patent recites a "combinatorial optimization." Finally, Claim 11 of the '086 patent makes use of an "economic optimization" that maximizes a "normalized economic surplus" and also considers the "opportunity cost" of assigning a given recipient to the call. However, the Plaintiff's claim charts are wholly devoid of any allegations that the Kapture CRM software actually performs any of these required mathematical calculations.

For Example, Exhibit 6 [DE 13-7] charts the "probabilistic predictive multivariate evaluator" on pages 6-7 thereof. However, the Plaintiff fails to identify any features of the Kapture CRM software that performs this function. Instead, the Plaintiff points to snippets of Kapture's marketing materials that describe its automated call allocation, and makes an inference, seemingly out of whole cloth, that the identified features of the Kapture CRM software operate it in a way that satisfies the claim limitation. The other claim charts (Exhibits 7-10) are no different.

In an analogous case, *Safecast Ltd.. v. Google, LLC*, 2023 U.S. Dist. LEXIS 209433 (N.D. Cal. Nov. 22, 2023), an asserted claim limitation called for "compliance with local broadcasting regulations laid down by a broadcasting authority…" *Id* at **8-9. The claim chart pointed to Google's own "community guidelines" to satisfy this limitation which stated that advertisements on YouTube "will comply with local laws..." *Id.* Even though it was *possible* that Google was separately complying with regulations laid down by a "broadcasting authority," the failure of Safecast to point to any such regulations outside of Google's own community guidelines meant that its infringement allegations were conclusory and failed to state a claim under Fed. R. Civ. P. 12(b)(6). *Id* at **9-11.

In the case at hand, Cruise America has no knowledge of Kapture CRM's software operations and does not know how Kapture CRM's software allocates calls. Notably, however, it is clear from the conclusory nature of the claim charts that the Plaintiff does not know either, and rather than investigate the nature of infringement in order to provide concrete allegations in its claim charts, the Plaintiff instead opted to make unsupported inferences and assumptions. So, while it is theoretically *possible* that Kapture CRM's software uses a "probabilistic predictive multivariate evaluator" to allocate its phone calls, the failure of the Plaintiff to actually discover and point to that kind of calculation in its claim charts means that its infringement allegations are conclusory and fail to state a claim under Fed. R. Civ. P. 12(b)(6).

Before turning to the substantive issues with the validity of the Asserted Claims, it bears repeating that Cruise America **does not use, and has never used**, the Kapture CRM software. The foregoing analysis is presented merely to demonstrate that the Plaintiff's claim fails *even if* the Court accepts that baseless allegation as true.

### c.  The Court Can and Should Determine that the Asserted Patents are Ineligible at the Pleading Stage

The determination of patent eligibility under 35 U.S.C. § 101 is a question of law. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). As such, the Federal Circuit has confirmed that courts may examine at the pleading stage whether a patent is directed to eligible subject matter under § 101. *See, e.g., Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1369 (Fed. Cir. 2019) (affirming district court's grant of motion to dismiss on § 101 grounds, and stating "[h]ere, the claims do no more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer. We hold that they are not patent

eligible under § 101."), and quoting *Alice*, 573 U.S. at 225 (internal quotations and citation omitted).

With regard to the treatment of this question specifically in the Middle District of Florida, after the Federal Circuit's decision in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, some courts in this District have approached this question cautiously in order to be certain "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *See, e.g., Lexmark Int'l, Inc. v. Universal Imaging Indus., LLC*, 2020 U.S. Dist. LEXIS 117535, at *2 (M.D. Fla. July 6, 2020) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). In the *Aatrix* case, the Federal Circuit held that the District Court erred in its decision to adjudicate eligibility at the pleading stage because the patentee had put forth credible factual allegations related to the inventive concepts present in the asserted patents, and that these credible factual allegations should have been taken as true, precluding a motion to dismiss. In the case at hand, there are no factual allegations about the inventive concepts in the operative complaint, let alone credible ones. Furthermore, as will be demonstrated, any attempt by the Plaintiff to inject factual allegations should not be taken as credible due to the extremely basic nature of the asserted claims. Therefore, the Court is free to hold the Asserted Patents to be ineligible.

Finally, while in some instances it may be necessary to construe claims before determining subject matter eligibility, claim construction is not an "inviolable prerequisite" to a §101 determination under Rule 12(b)(6). *Genetic Techs. Ltd. v. Merial LLC,* 818 F.3d 1369, 1374 (Fed. Cir. 2016).

### d.  The Asserted Claims are Representative

The Plaintiff charted one claim of each Asserted Patent and indicated that the charted claims are "exemplary." *See,* Paragraphs 16, 22, 28, 33, 39, 44, 50, and 56 of the First Amended Complaint [DE 13]. The Federal Circuit has held that a district court is not required to address all claims of all asserted patents, if there are representative claims that are substantially similar and linked to the same abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Integrated Advert. Labs, LLC v. Revcontent, LLC*, 644 F. Supp. 3d 1031, 1035 (M.D. Fla. 2022)("[c]ourts may treat a claim as representative … if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.") (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)). The parties may also agree to treat a claim as representative. *Berkheimer*, 881 F.3d at 1365. Given that the Plaintiff itself has alleged that the charted claims are "exemplary," the Court need only consider the charted, "exemplary" claims in this analysis.

Notwithstanding, the Court's attention is directed to Exhibit A (and as explained in further detail in Section (d)), which demonstrates the elements of the Asserted Claims can all be easily grouped into four basic steps. While the precise language of each step varies from claim to claim, they are all "substantially similar" and "linked to the same abstract idea." Therefore, any one of the Asserted Claims can be considered representative. Cruise America refers to Claim 10 of the '979 Patent throughout its analysis, but because all claims are representative, the arguments stand for all Asserted Claims.

### e.  Patent Eligibility Analysis under *Alice*

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Because patent protection should not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice*, 573 U.S. 208. In *Alice* the Supreme Court instructed district courts to weed out patents that claim ineligible subject matter, but were nevertheless approved by the patent office, and to distinguish those claims from ones that "integrate the building blocks into something more." *Id.* "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 218. If so, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). Hence, the Supreme Court provides a two-step framework.

### i.  Legal Standards for *Alice* Step One

At Alice step one, the Court determines whether the claims at issue are "directed to" a patent-ineligible concept. *Alice*, 573 U.S. at 218. Under this inquiry, the claims are considered "in their entirety to ascertain whether their character <u>as a whole</u> is directed to [an abstract idea]" *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)(emphasis added). To this end, if a claim merely recites "a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," the "functional nature of the claim

confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). This is because claims directed to generalized steps to be performed on a computer using convention computer activity are not patent eligible. *Two-Way Media Ltd.,* 874 F.3d at 1329.

Another lens to address the *Alice* Step One inquiry is by analogy. Courts may also look to other opinions addressing claims that are similar, and which were determined by another court to be "directed to" an abstract idea. *See, e.g., Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("the Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry…. Rather, both this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.") The *Enfish* court also noted that "conventional business practices" are often found to be abstract ideas, even if performed on a computer. *Id* at 1335.

### ii. Legal Standards for *Alice* Step Two

At step two, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 78-79). The second step of the Alice test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and]

conventional activities previously known to the industry.'" *Content Extraction & Transmission* 776 F.3d at 1347 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).

Even ideas that could be considered "groundbreaking" or "innovative" are not sufficient for eligibility if the claims are directed to the idea itself. *See, e.g., Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a new abstract idea is still an abstract idea.") "An innovator who makes such an advance lacks patent protection for the advance itself." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm." *Id* at 1168. To the extent claims include non-abstract elements, such as specific calculations, they are still ineligible if they recite "well understood, routine, conventional activities previously known to the industry." *Alice*, 573 U.S. at 225 (quotation omitted). In discussing this aspect of the *Alice* Step Two framework, the Federal Circuit has said that "the ineligible concept to which [a claim] is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Instead, the correct scope of inquiry is "whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *Id.*

### f. The Asserted Claims are Directed to an Abstract Idea under *Alice* Step One

Attached as Exhibit A is a chart of the asserted claims which groups their similar steps into general categories, demonstrating that they are all directed to the patent ineligible abstract idea of evaluating information about an incoming communication and determining where to route the communication. As can be seen, all asserted claims

13

include four basic elements:

**Element A** – receiving a communication and/or information about the communication;

**Element B** – determining potential targets for the communication and/or information about the targets;

**Element C** – determining to which target the communication should be routed; and

**Element D** – routing the communication to the target.

Given that these claims are directed to a fundamental aspect of conducting business, it is no surprise that there are numerous opinions in which analogous claims were found to be directed to an abstract idea. *See, e.g., Voip-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926 (N.D. Cal. 2019)(finding the asserted claims to be "simply an attempt to implement well-known, longstanding call routing practices using a computer."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (addressing claims involving (1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information); *24/7 Customer v. LivePerson, Inc.*, 2017 U.S. Dist. LEXIS 81479 (N.D. Cal. May 25, 2017)(discussed in detail below); *Pragmatus Telecom, LLC v. Genesys Telecommunications Lab'ys, Inc.*, 114 F. Supp. 3d 192, 200 (D. Del. 2015) ("…the patent is fundamentally directed to the abstract idea of connecting customers to call centers.")*; RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 996 (N.D. Cal. 2019) (addressing a computerized system that "merely implements" the old practice of sorting messages in a corporate mailroom in a

"new environment" without adding more).

The Northern District of California opinion in *24/7 Customer v. LivePerson, Inc.*,

2017 U.S. Dist. LEXIS 81479 (N.D. Cal. May 25, 2017) is particularly instructive. In that

case, the representative claim provided (presented below next to one of the Asserted

Claims):

| Claim 10 of U.S. Patent No. 7,023,979 (Asserted Patent) | Claim 1 of U.S. Patent No. 6,798,876 (*24/7 Customer* Case) |
|---|---|
| A communications method comprising: | A method for routing an incoming call to a customer service representative comprising the steps of: |
| a) receiving a plurality of communications, each having associated classification information; | identifying the caller of the incoming call; retrieving a profile on the caller; |
| (b) storing information representing characteristics of a plurality of potential targets; | comparing the caller profile with stored customer service representative profiles |
| (c) determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets; and | to determine which customer service representatives are more qualified to handle the incoming call; ranking the customer service representatives that can best meet the caller's needs; |
| (d) routing the communication to the optimum target, said determining step and said routing step being performed within a common operating environment. | routing the incoming call to a selected highest ranked customer service representative; and |
| | automatically updating, at the completion of the call, the caller profile and the selected customer service representative profile with information regarding the success of the call. |

*Id* at at *5-6. The Court found that the *24/7* claim was directed to the abstract idea of

routing a call to a customer service agent based on information about the caller because

the claims were not directed to a specific improvement or to a specific implementation

of a solution to a problem. As the Federal Circuit recently explained, the relevant inquiry

is "whether the claims in the patent focus on a *specific means or method*, or are instead

directed to *a result or effect that itself is the abstract idea* and merely invokes generic processes and machinery." *Clarilogic, Inc. v. FormFree Holdings Corp.,* 681 Fed. Appx. 950, 954 (Fed. Cir. Mar. 15, 2017) (emphases added). Here, the claims do not provide for any specific implementation of this abstract idea — for example, they do not specify the content of the "classification information" of the communication or the "characteristics" of the targets, or even how the information should be analyzed to identify the "optimum target" beyond merely stating that it should be a "multivariate cost function." In other words, the claims "recite the *what* of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application." *24/7 Customer v. LivePerson, Inc.*, at *11 (citing *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (emphases in original).

In the case at hand, the Court may note that the Plaintiff's claims differ from *24/7* in that they include generic mathematical operations. For example, claim 10 of the '979 patent calls for "determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets," but it fails to specify *how* the multivariate cost function is used to compare the three potential targets other than with reference to vague and generic "classification" and "characteristics," or even which variables should be included in the multivariate cost function. Because these generic mathematical operations are only recited at a very high level of generality, they are insufficient to save the claims from being "directed to" an abstract idea overall. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016)(confirming the treatment of "analyzing information by … mathematical algorithms, without more, as essentially

16

mental processes within the abstract-idea category."); s*ee, also  CardioNet, LLC v. InfoBionic, Inc.,* 2021 U.S. App. LEXIS 32392, at *4 (Fed. Cir. Oct. 29, 2021) ("filtering the data requires only basic mathematical calculations … and such calculations, even if '[g]round breaking,' are still directed to an abstract idea.").

By another metric of analysis for *Alice* Step One, the claimed steps can be performed in the human mind or on paper, which also demonstrates that they are directed to an abstract idea. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) ("A 'telltale sign of abstraction' is when the claimed functions are "mental processes 'can be performed in the human mind' or 'using a pencil and paper.'") (internal citations omitted). The fact that the asserted claims flirt vaguely with computer elements (e.g., "a common operating environment" or an "automated processor") does not save them because they are common and generic computing components. *See Two-Way Media Ltd.,* 874 F.3d at 1337 ("[c]laims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible.") "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Finally, it is notable that many other patents in this field and containing similar claims have been determined to be directed to an abstract idea. *See, e.g., Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.,* 114 F. Supp. 3d 192, 200 (D. Del. 2015) ("[a]t its essence, the claim is directed to the abstract idea of communication between a customer and a business using a call center, automated and obfuscated along the way using certain computer, telephonic and network services.")

### g.  The Asserted Claims Fail Under Alice Step Two

Having established that the Asserted Claims are generally directed to an abstract idea, Step Two of the *Alice* framework considers whether the claims include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice*, 573 U.S. at 221 (citing *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 77–78 (2012)). Importantly, the additional features must be more than a "well-understood, routine, conventional activity" previously known in the industry. *Mayo*, 566 U.S. at 79.

At heart, the claims recite the steps of receiving a phone call, collecting information about the nature of the call and the caller, determining which person should receive the call, and finally forwarding the call. These steps are utterly routine and conventional in business, and have been practiced by receptionists and operators since the adoption of the telephone. The fact that the claims are dressed with complicated and technical-sounding terminology such as a "multivariate cost function" is of no avail if the claim does not provide a concrete implementation of the invention. *See e.g., ClearDoc Inc. v. RiversideFM Inc.*, 2022 WL 3355960, at *3 (D. Del. Aug. 15, 2022) ("seemingly technical language, such as 'media content,' 'control system,' 'communication session,' 'mobile device,' 'trigger signal,' 'data storage device,' and 'control signal' … amount to no more than generic computer components"). Once again, the *24/7* opinion is instructive:

> Here, the claims do not provide for any specific implementation of this abstract idea — e.g., they do not specify the structure or content of the profiles, the technology that should be used to perform the comparison, or even how the profile information should be analyzed to achieve the proposed solution. … Rather, they simply recite a generalized solution in broad, functional language—namely, "retrieving," "comparing," and "ranking" information about the customer and representative. … In other

>words, the claims recite the **what** of the invention, but none of the **how** that
>is necessary to turn the abstract idea into a patent-eligible application.

*24/7* at \*4 (emphasis in original) (citations and quotations omitted). With regard to the asserted claims, and despite their reliance on seemingly complicated verbiage, they also do not recite the "how" that is necessary for an eligible claim. This relegates the claims to the realm of abstract ideas. For example, referencing Claim 10 of the '979 patent, the claim fails to specify what variables are referenced in the "multivariate cost function," what target characteristics are relevant, and perhaps worst of all, how an "optimum target" is measured and distinguished from a less than optimal target, which is a highly subjective standard. What is left is a "drafting exercise" that attempts to pre-empt all implementations of a method that considers more than one variable when determining where to route a call. This process has been conducted countless times since the adoption of the telephone, such as when a telephone receptionist inquires about the nature of a call and the name of a caller, and then considers who, among all staff members, is best suited to handle the call.

The ambiguous hints at computing hardware peppered throughout the Asserted Claims (e.g., an "automated processor" or a "common operating environment") are also insufficient to rescue the claims because, even at their most charitable interpretation, they are nothing more than generic computer components implemented in routine ways. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; This is also confirmed by the specifications of the asserted patents, which admit that the purported invention is limited to new algorithms to be implemented on conventional hardware. *See* U.S. Patent No. 7,023,979 at 59:9-21, 68:64-69. "A claim for a new abstract idea, here, a mathematical

calculation, is still an abstract idea." *CardioNet, LLC v. InfoBionic, Inc.*, 2021 U.S. App. LEXIS 32392, at *15 (Fed. Cir. Oct. 29, 2021)(citing *SAP*, 898 F.3d at 1163 and *Synopsys, Inc.* 839 F.3d 1138, 1151)(internal quotations omitted).

**V.   CONCLUSION**

While the Plaintiff may request leave to file a Second Amended Complaint in order to address its lack of pre-suit investigation, an amended pleading will be futile as it will not cure the deficiencies in the patents themselves. This is because the Asserted Claims are directed to the abstract idea of deciding how to route telephone calls. The attempted invocation of generic mathematical equations, complicated technical language, and vague allusions to computer hardware are not sufficient to salvage the claims. Moreover, the Plaintiff has already amended its complaint once as a matter of right. Accordingly, the Court can and should evaluate the eligibility of the Asserted Claims and dismiss the complaint with prejudice.

Date:  February 28, 2024

Respectfully submitted,

/s/ W. John Eagan
Oliver Alan Ruiz, Lead Counsel
Florida Bar No. 524,786
oruiz@malloylaw.com
W. John Eagan
Florida Bar No. 105,101
johneagan@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. 3rd Avenue
Miami, FL 33129
T: (305) 858-8000

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on February 28, 2024 via CM/ECF or in the manner specified below on all parties of record on the Service List below.

<u>/s/ W. John Eagan</u>
W. John Eagan

### SERVICE LIST

Terry M. Sanks, Esquire
Beusse Sanks, PLLC
157 E. New England Ave., Suite 375
Winter Park, FL 32789
407-644-8888
tsanks@firstiniplaw.com

Isaac Rabicoff
Rabicoff Law LLC
600 Mamaroneck Ave STE 400
Harrison, NY 10528
773-669-4590
isaac@rabilaw.com